## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**CHRISTOPHER JOSEPH REED**                                            **PLAINTIFF**

**v.**                              **Case No. 3:24-cv-00198-KGB**

**CITY OF WYNNE,** *et al.*                                          **DEFENDANTS**

## ORDER

Before the Court is *pro se* plaintiff Christopher Joseph Reed's application to proceed *in forma pauperis* ("IFP") without prepaying fees or costs (Dkt. No. 1), as well as his motion to appoint counsel (Dkt. No. 3). For the following reasons, the Court grants Reed's application to proceed IFP and permits Reed to proceed without prepayment of the filing fee (Dkt. No. 1). The Court denies Reed's motion to appoint counsel (Dkt. No. 3).

### I.    IFP Application

The Clerk of Court entered an Order provisionally granting Reed leave to proceed IFP pursuant to General Order No. 29 (Dkt. No. 4). The Court now makes an independent determination as to Reed's IFP application. Under 28 U.S.C. § 1915, the decision to grant or deny an application to proceed without prepaying fees or costs is within the sound discretion of the district court. *Cross v. General Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). Although a claimant need not be "completely destitute" to take advantage of the IFP statute, he must show that paying the filing fee would result in an undue financial hardship. *In re Williamson*, 786 F.2d 1336, 1338 (8th Cir. 1986) (quoting *In re Smith*, 600 F.2d 714, 715 (8th Cir. 1979)). The Court finds that Reed does not have the ability to pay the filing fee without suffering an undue financial hardship and grants his application to proceed without prepaying fees or costs (Dkt. No. 1).

## II.    Screening

Reed is not incarcerated pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915.  However, the Court must screen Reed's complaint to determine whether it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2); *Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016) ("Although some district courts have limited section 1915(e)(2)(B)(ii) pre-service dismissal to litigants who are prisoners, . . . all of the circuit courts to address the issue have held that nonprisoner complaints can be screened and dismissed pursuant to section 1915(e)(2)(B).").

Reed's complaint asserts federal question jurisdiction under 28 U.S.C. § 1331 (Dkt. No. 2, at 4).  Specifically, Reed states that his claims are governed by 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, as well as Arkansas statutory and tort law (*Id.*, at 74–120).

### A.    Representative Claims

As a threshold matter, Reed purports to bring this action on behalf of himself and "as a power of attorney of the estate of Mr. Joseph Taylor," his partner.  The Court notes that, as a non-attorney, Reed is engaging in the unauthorized practice of law by purporting to bring an action *pro se* on behalf of Taylor or Taylor's estate; Reed's role as administrator of Taylor's estate or any power of attorney arrangement between Reed and Taylor does not change this situation.  *See Davidson Props., LLC v. Summers*, 244 S.W.3d 674, 675 (Ark. 2006); *Davenport v. Lee*, 72 S.W.3d 85, 92–93 (Ark. 2002).  As such, the Court dismisses any claims Reed purportedly brings on behalf of Taylor, Taylor's estate, the citizens of Wynne, or any other persons or entities besides Reed himself.  The Court will consider only the claims Reed brings on his own behalf.

### B.    Named Defendants

The complaint names defendants as follows:  (1) the City of Wynne; (2) Jennifer Hobbs, in her official capacity as Mayor of the City of Wynne; (3) Richard Dennis, in his official capacity as Police Chief of the City of Wynne; (4) Anna Stewart, in her official capacity as a Police Officer of the City of Wynne; (5) Jamie Jordan, in her official capacity as a Police Officer of the City of Wynne; (6) John and Jane Does 1–15, the City Council Members of the City of Wynne, in their official capacities; (7) John and Jane Does 1–6, Cross County District Courts, in their official capacities; (8) John and Jane Does 1–4, the City Attorney Office of the City of Wynne, in their official capacities; (9) John and Jane Does 1–4, Cross County District Court Prosecutor's Office, in their official capacities; (10) Cross County Sheriff's Department, "including David West"; (11) John and Jane Does 1–5, Cross County Detention Center, in their official capacities; (12) John and Jane Does 1–10, City of Wynne Police Department Officers, in their official capacities; (13) John and Jane Does 1–4, Cross County Dispatch, in their official capacities; (14) John and Jane Does 1–4, Coachman's Inn Motel, "in their official capacities"; (15) John and Jane Does 1–8, Forrest City Police Department; (16) the City of Forrest City ("Forrest City"); (17) Larry Bryant, in his official capacity as Mayor of Forrest City; (18) Diamond Inn Motel - Forrest City ("Diamond Inn"); (19) St. Francis County District Court; and (20) John and Jane Does 1–20, hospital staff of St. Bernard's Hospital (*Id.*, at 1–4, 18–24).[1]

---

[1]  Reed's complaint also states in passing that "there have been additional violations of civil rights and ADA regulations by the City of Jonesboro Police Department," which allegedly left Reed "being transported to a trauma unit with broken bones and other severe injuries" (Dkt. No. 2, at 14).  To the extent that Reed means to allege a claim against the City of Jonesboro Police Department or the City of Jonesboro, the Court finds that the complaint fails to state a claim upon which relief can be granted in the absence of any specific factual allegations concerning these alleged violations.  Similarly, Reed mentions in his complaint "the offices of the City Prosecuting Attorney" (*Id.*, at 5), but no specific individual or city is identified, and the Court finds that the

A threshold issue with respect to the named defendants is that Reed attempts to sue several entities that are not properly subject to suit. First, courts are not *sui juris* entities capable of being sued. *See Cooper v. Rapp*, 702 F. App'x 328, 334 (6th Cir. 2017). As such, any claims that Reed purports to bring against St. Francis County District Court and the Cross County District Court are not properly brought. The Court dismisses those claims.

Likewise, to the extent that Reed purports to sue the Cross County Sheriff's Department— the complaint is ambiguous as to whether it is directed only against David West or also against the entity itself—any such claims fail as to the entity because a sheriff's department or police department is not an entity subject to suit. *Wright v. Bella Vista Police Dep't*, 452 F. Supp. 3d 830, 835 (W.D. Ark. 2020). Moreover, to the extent Reed alleges claims against any subdivision of city or county government, his suit is in reality directed towards the city or county government itself, respectively. *See Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992).

Reed also states in his complaint that he is bringing his claims against the named defendants in their official capacities. Unlike personal capacity suits, which "seek to impose personal liability upon a government official for actions he takes under color of state law," official capacity suits are really "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As such, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. In this case, the individual defendants Reed names in his complaint—other than the John Doe employees of Coachman's Inn Motel, Diamond Inn, and the John Doe hospital staff of St. Bernard's Hospital— are all employees either of Wynne or of Cross County. As such, the real defendants to Reed's

---

complaint fails to state a claim upon which relief can be granted against these individuals and entities, given the absence of any specific factual allegations concerning these alleged violations.

claims against those individuals in their official capacities are Wynne and Cross County, respectively. The real defendant to Reed's claims against Larry Bryant, in his official capacity as Mayor of Forrest City, is the city of Forrest City. Likewise, the Court understands the real defendant to Reed's claim against the Doe employees of Coachman's Inn Motel "in their official capacities" to be Coachman's Inn Motel. The same goes for Reed's claims against the Doe staff members of St. Bernard's Hospital.

All of this said, the Court understands the proper defendants to this lawsuit to be, to wit: (1) the City of Wynne ("Wynne"); (2) Cross County, Arkansas ("Cross County"); (3) the City of Forrest City ("Forrest City"); (4) Coachman's Inn Motel; (5) Diamond Inn; and (6) St. Bernard's Hospital.

### C.    Legal Claims

#### 1.    List Of Causes Of Action

The second half of the complaint lists the specific causes of action alleged by Reed. The causes of action Reed identifies are: (1) "violation of 42 U.S.C. § 1983 (Civil Rights Act)" for various constitutional violations against defendant police officers and Wynne (Dkt. No. 2, at 74–77); (2) violation of the ADA against defendants "including the City of Wynne Police Department and Cross County Sheriff's Office" (*Id.*, at 77–80); (3) "state civil rights claims" under the "Constitution and laws of the State of Arkansas" against defendants "including City of Wynne Mayor Jennifer Hobbs, Wynne Chief of Police Richard Dennis, Cross County Sheriff David West, and various officers of the Wynne Police Department" (*Id.*, at 80–83); (4) "violation of state anti-discrimination laws" against defendants "including the City of Wynne, its police officers, and other associated entities" (*Id.*, at 83–86); (5) the torts of assault and battery against "the City of Wynne, its police officers, and other associated entities" (*Id.*, at 86–88); (6) false arrest against "the City

of Wynne, its police officers, and other associated entities (*Id.*, at 88–91); (7) false imprisonment against "the City of Wynne, its police officers, and other associated entities" (*Id.*); (8) intentional infliction of emotional distress against "the City of Wynne, its police officers, and other associated entities" (*Id.*, at 92–94); (9) "negligence" against defendants "City of Wynne, its police department, and the involved officers" (*Id.*, at 94–96); (10) negligent infliction of emotional distress against defendants "City of Wynne its police department, and the individual officers" (*Id.*, at 96–98); (11) malicious prosecution against "City of Wynne Mayor Jennifer Hobbs, Wynne Chief of Police Richard Dennis, Cross County Sheriff David West, and other involved officers" (*Id.*, at 99–105); (12) failure to accommodate under the ADA against various defendants (*Id.*, at 106–112); (13) failure to train against Wynne pursuant to 42 U.S.C. § 1983 (*Id.*, at 112–16); (14) failure to supervise or discipline against Wynne pursuant to 42 U.S.C. § 1983 (*Id.*, at 112–20).

### 2.    42 U.S.C. § 1983 Claims

Construed liberally, Reed's complaint alleges claims for a wide range of constitutional violations pursuant to 42 U.S.C. § 1983 ("§ 1983"), which prohibits anyone acting under color of law to deprive another of the "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  The Court will consider each of Reed's § 1983 claims in turn.

### a.    Local Government Liability Standard

Because Reed's § 1983 claims are brought against Wynne and Cross County officials in their official capacity, Reed's claims must meet the legal standard for local government liability under § 1983 as set out by the Supreme Court in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).  Under the *Monell* standard, local governments are liable for the § 1983 violations of their employees if the plaintiff can show that the violations were made "pursuant to official municipal policy" or "misconduct so pervasive among non-policymaking

employees of the municipality 'as to constitute a "custom or usage" with the force of law.'"
*Mitchell v. Kirchmeier*, 28 F.4th 888, 899 (8th Cir. 2022) (quoting *Ware v. Jackson Cnty.*, 150
F.3d 873, 880 (8th Cir. 1998)).  To show a "custom or usage," the plaintiff must prove:  (1) "[t]he
existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the
governmental entity's employees"; (2) "[d]eliberate indifference to or tacit authorization of such
conduct by the governmental entity's policymaking officials after notice to the officials of that
misconduct"; and (3) an "injury by acts pursuant to the governmental entity's custom." *Id.* at 899–
900 (alterations in original) (quoting *Ware*, 150 F.3d at 880).  At the pleading stage, "the key to
surviving dismissal is that the 'complaint must allege facts which would support the existence of
an unconstitutional policy or custom.'" *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d
842, 867 (D. Minn. 2015) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605,
614 (8th Cir.2003)).  Courts in the Eighth Circuit have upheld complaints alleging *Monell* liability
where the plaintiff has alleged "more than a single act." *Id.* (quoting *R.S. ex rel. S.S. v. Minnewaska
Area Sch. Dist. No. 2149*, 894 F. Supp. 2d 1128, 1137–38 (D. Minn. 2012); *see also Stevenson v.
Doe*, Case No. 20-cv-02007-SRN-TNL, 2021 WL 931186, at *4 (D. Minn. Mar. 11, 2021) (finding
sufficient complaint that alleged "at least one similar incident of misconduct" and "generally
alleges the use of excessive force by MPD officers").  Against this backdrop, the Court examines
the specific constitutional violations and other violations of law Reed alleges.

### b.     Excessive Force

Reed's complaint repeatedly states his belief that he was subjected to the use of excessive
force by Wynne police officers.  To state a Fourth Amendment claim for excessive force for
purposes of § 1983, a plaintiff must allege:  (1) that the plaintiff was "seized" within the meaning
of the Fourth Amendment; and (2) that an officer's use of force was objectively unreasonable given

the facts and circumstances of the incident as "judged from the perspective of a reasonable officer on the scene." *Deezia v. City of Lincoln*, 350 F. Supp. 3d 868, 883 (D. Neb. 2018) (quoting *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013)).

In this case, Reed has alleged that, on July 31, 2021, he was tased three times while handcuffed by officers sent by Cross County Dispatch for "not removing items from a vehicle quickly enough" after calling the police for assistance with a civil matter (Dkt. No. 2, at 26–27). He has also alleged that, on October 23, 2023, after calling police officers for assistance during a mental health emergency, the officers arrested and handcuffed him and slammed him face down onto concrete after placing him in leg irons (*Id.*, at 27–28, 87). Reed alleges that the officers in both incidents were aware of his mental health conditions (*Id.*, at 97). On another unspecified incident, Reed alleges that officers "stomped on [his] head, leading to a broken nose and other trauma" (*Id.*, at 117). Taken as true and construed in the light most favorable to Reed, these allegations are sufficient to establish for present purposes that the officers seized Reed and applied objectively unreasonable force to him, even when viewed from the perspective of a reasonable officer. Additionally, Reed has sufficiently pled for present purposes facts supporting the existence of an unconstitutional policy or custom regarding the use of excessive force. He has pled two specific incidents of the use of excessive force, that these incidents have never been investigated despite Reed's complaints (*Id.*, at 82), and generally that the Wynne Police Department "has not significantly altered its use-of-force tactics," which include "set[ting] their dogs against black individuals, "often in cases where doing so was not justified by the danger presented" (*Id.*, at 72–73).

For these reasons, the Court finds at this stage that Reed's complaint successfully states an excessive force claim against Wynne and Cross County under § 1983.[2]

### c.    Unreasonable Search

Reed's complaint alleges that Wynne police officers "engage[] in a pattern of conducting searches without legal justification" in violation of the Fourth Amendment (*Id.*, at 34).  To state a Fourth Amendment claim for an unconstitutional search under § 1983, a plaintiff must allege:  (1) an unlawful search; and (2) an "actual, compensable injury."  *Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019).  The damages alleged must stem specifically from the unlawful search, rather than any attendant Fourth Amendment seizure or other constitutional violation, and must be beyond the mere indignity of the search itself.  *See id.* at 741.  In this case, Reed specifically alleges that he and Taylor were "searched in their home and their parent's home without a warrant" for no apparent reason.  However, Reed does not allege any "actual, compensable injury" stemming from this search.  All other allegations relating to unconstitutional searches in the complaint are pled generally or otherwise are not based upon Reed's personal experiences.

For these reasons, the Court finds that Reed's complaint fails to state a claim for an unreasonable search claim under § 1983.

### d.    First Amendment Retaliation[3]

Reed's complaint repeatedly alleges that the Wynne police have violated the First Amendment rights of citizens by retaliating against citizens who attempt to record public police

---

[2]  Because Reed's allegations involve both Wynne and Cross County law enforcement officials, often portrayed as acting in concert, the Court for present purposes treats all of Reed's claims based on law enforcement conduct as directed against both Wynne and Cross County, except where the complaint indicates otherwise.

[3]  The Court does not understand Reed's complaint to allege that any official law or policy of Wynne or Cross County violates the First Amendment.

activity (Dkt. No. 2, at 25, 39–42).  To state a claim for First Amendment retaliation under § 1983, a plaintiff must allege that:  (1) the plaintiff engaged in a constitutionally protected activity; (2) the defendant took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated in part by the plaintiff's exercise of his constitutional rights.  *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014).  With respect to the first element, the weight of authority in the Eighth Circuit indicates that "a person has the right to record police activity in public."  *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020); *but see Molina v. City of St. Louis*, 59 F.4th 334, 340 & n.2 (8th Cir. 2023), *cert. denied sub nom. Molina v. Book*, 144 S. Ct. 1000 (2024) (finding that there is no clearly established "right to observe police officers" for qualified immunity purposes).

In this case, Reed's allegations of retaliation include the following:  (1) that in retaliation for an administrative complaint Reed filed in September 2021 regarding alleged civil rights violations in Wynne, he was subjected to "numerous municipal charges, including arrest warrants and attempts to charge the Plaintiff with DWI," most of which were subsequently dismissed, as well as officers "failing to respond to emergency calls placed on behalf of Reed" (Dkt. No. 2, at 7, 117); (2) that Officer Jordan obtained a warrant against Reed in May 2022 on false pretenses in retaliation for videotaping Officer Jordan's interactions with Taylor, and Reed was subsequently arrested on that warrant as "promised" by Officer Jordan in retaliation for recording Officer Jordan (*Id.*, at 35–37); (3) that Reed was threatened by Officer Jordan and Officer Stewart regarding Reed's social media posts (*Id.*, at 33); (4) that Reed was arrested by Officer Stewart for using offensive language against her even though other officers had released him and told him he was "free to go" (*Id.*, at 42–43); and (5) that Wynne police generally engage in a pattern of retaliation against those who record them (*see id.*, at 39–40). Reed thus alleges both that he was subject to

10

specific incidents of retaliation for engaging in constitutionally protected activity—namely, criticizing and recording police conduct in public—and that Wynne and Cross County are engaging in a practice of First Amendment retaliation.

For these reasons, the Court finds Reed's allegations sufficient for present purposes to state a claim for First Amendment retaliation against Wynne and Cross County.

### e.    False Arrest

Reed's complaint alleges that he was subjected to warrantless arrest in violation of the Fourth Amendment. "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (quoting *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010)). Likewise, "when a police officer deliberately or recklessly makes false statements to demonstrate probable cause for an arrest warrant, the warrant may be invalidated." *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). In cases where an allegedly invalid warrant is implicated, the plaintiff must show: (1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; and (2) that the affidavit's remaining content is insufficient to provide probable cause. *Id.* (quoting *United States v. Box*, 193 F.3d 1032, 1034–35 (8th Cir. 1999)). Probable cause exists "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Brown v. City of St. Louis*, 40 F.4th 895, 900 (8th Cir. 2022) (quoting *Nader v. City of Papillion,* 917 F.3d 1055, 1058 (8th Cir. 2019)).

In this case, Reed alleges that he was subjected to both warrantless arrests without probable cause and arrest based upon invalid warrants. Specifically, Reed alleges that, on July 31, 2021, Reed was arrested without probable cause after calling Cross County Dispatch for assistance

11

because the police felt that he was not removing items from his vehicle fast enough (Dkt. No. 2, at 26–27). Then, on May 5, 2022, Reed was arrested again by Officer Jordan, a Cross County deputy sheriff, and other officers on an arrest warrant for "interfering with government operations" (*Id.*, at 32, 40–41). The arrest warrant was based on an affidavit in which Officer Jordan allegedly intentionally failed to disclose that Reed was not in proximity to interfere and was merely recording the incident in question (*Id.*, at 32). Finally, on October 23, 2023, Reed alleges that he was arrested without apparent cause after requesting police assistance with a mental health emergency (*Id.*, at 27–28). Reed also alleges generally that Wynne police are engaged in a pattern of making arrests "without the requisite legal justification" (*Id.*, at 29). Reed thus alleges both that he was subject to specific incidents of arrest without probable cause or without valid arrest warrants and that Wynne is engaged in a pattern of arrests unsupported by probable cause.

For these reasons, the Court finds Reed's allegations sufficient for present purposes to state a claim for false arrest against Wynne and Cross County under § 1983.[4]

### f.    Failure To Train, Supervise, Or Discipline

Reed alleges a claim for "failure to train and supervise" specifically against named defendant Wynne pursuant to § 1983 (*Id.*, at 112–16). To state a claim for failure to train against a local government, a plaintiff must allege that the "municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Perkins v. Hastings*, 915 F.3d 512, 523 (8th Cir. 2019) (alteration in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). The plaintiff must

---

[4] To the extent that Reed alleges a claim under § 1983 for false imprisonment, it seems to the Court from the allegations in the complaint that such a claim would be factually and legally indistinguishable from his false arrest claim for § 1983 purposes, as his false imprisonment claim is coextensive with his false arrest claim (*see* Dkt. No. 2, at 88–91).

show that the local government "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Parrish v. Ball*, 594 F.3d 993, 998 (8th Cir. 2010) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). Similarly, a failure to supervise claim will only survive where the plaintiff sufficiently shows notice and "deliberate indifference or tacit authorization of the offensive acts." *Jiang v. Porter*, 156 F. Supp. 3d 996, 1009 (E.D. Mo. 2015) (citing *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998)). The same applies to claims alleging "failure to discipline." *See Teasley v. Forler*, 548 F. Supp. 2d 694, 707 (E.D. Mo. 2008); *McDaniels v. City of Philadelphia*, 234 F. Supp. 3d 637, 645 (E.D. Pa. 2017). In this regard, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *McDaniels,* 234 F. Supp. 3d at 645*2* (citations omitted).

In this case, Reed's complaint contains no specific allegations with respect to the training received by Wynne police officers. However, for purposes of Reed's failure to supervise claim, the allegations plausibly allege both the existence of various unconstitutional practices of the Wynne and Cross County police and that Wynne officials were on notice of those practices. Specifically, Reed alleges that in September 2021 he drafted a complaint with respect to the alleged ongoing civil rights violations in Wynne and sent it to various officials in Wynne's government (Dkt. No. 2, at 7–10). As such, Reed has sufficiently pled for present purposes that Wynne officials were on notice of the pattern of constitutional violations alleged in the complaint, took no action in response, and that the violations continued in the following years.

For these reasons, the Court finds Reed's allegations sufficient for present purposes to state a claim for failure to train, supervise, or discipline against Wynne under § 1983.

3.    **ADA Claims**

a.    **Title II Discrimination**

Reed alleges that Wynne and Cross County violated his rights under Title II of the ADA (*Id.*, at 77–80, 106–09).  Title II of the ADA requires that "qualified persons with disabilities receive effective communication that results in 'meaningful access' to a public entity's services." *Folkerts v. City of Waverly*, 707 F.3d 975, 984 (8th Cir. 2013) (quoting *Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 784 (8th Cir. 2012)).  The "meaningful access" standard requires public entities to provide disabled individuals with an "equal opportunity . . . to gain the same benefit" to services provided.  *Wortham v. City of Benton*, Case No. 4:19-cv-00069-KGB, 2021 WL 4150403, at *6 (E.D. Ark. Sept. 13, 2021) (quoting *Loye v. City of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010)).  To establish a *prima facie* case of discrimination under Title II, a plaintiff must allege:  (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability. *Randolph v. Rodgers*, 170 F.3d 850, 857-58 (8th Cir. 1999).

In this case, Reed alleges that he has been diagnosed with several mental health conditions, "including PTSD, anxiety, borderline personality disorder, manic depression disorder, bipolar 2, and possibly schizophrenia" (Dkt. No. 2, at 83–84).  The Court finds this sufficient for present purposes to show that Reed is disabled within the meaning of the statute.  With respect to the second and third elements of a *prima facie* Title II claim, Reed alleges at least two specific incidents potentially implicating Title II.  First, on May 5, 2022, when Officer Jordan and other officers arrested Reed pursuant to a warrant, they allegedly denied him treatment for his mental health conditions during the arrest and accused him of "faking" when he requested an accommodation (*Id.*, at 35–36, 40–41).  According to Reed's allegations, the officers confiscated

14

his PTSD service dog and mocked him at the hospital for his religious beliefs (*Id.*, at 36).  Second, on October 23, 2023, Reed alleges that, after calling the police for assistance with a mental health emergency and asking them to take him to the hospital, he was arrested, handcuffed, and slammed face down onto concrete with leg irons (*Id.*, at 27–28, 87).  Further, Reed alleges that officers were aware of his mental health conditions at all relevant times (*Id.*, at 97).  The Court finds these allegations sufficient at this stage of the litigation to show that Wynne and Cross County law enforcement excluded Reed from the benefits of law enforcement assistance during his arrests and requests for police intervention because of his disability.  Indeed, the Eighth Circuit has specifically noted that Title II's protections apply even during arrests.  *See Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) ("The fact that Gorman may not have 'volunteered' to be arrested does not mean he was not eligible to receive transportation service to the police station.")

For these reasons, the Court finds Reed's allegations sufficient for present purposes to state a claim under Title II of the ADA against Wynne and Cross County.

### b.      Title III Claims

Although it does not state so specifically, Reed's complaint, construed liberally, alleges claims against Coachman's Inn Motel, Diamond Inn, and St. Bernard's Hospital under Title III of the ADA (*See* Dkt. No. 2., at 28, 109–11, 117).  "Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities."  *Steger v. Franco, Inc*., 228 F.3d 889, 892 (8th Cir. 2000).  To state a claim under Title III, a plaintiff must sufficiently allege: (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the defendant failed to make reasonable modifications that do not fundamentally alter the nature of the public accommodation.  *Nathanson v. Spring Lake Park Panther Youth Football Ass'n*, 129 F. Supp. 3d

743, 747 (D. Minn. 2015) (citing *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1076 (8th Cir. 2006)). The only remedy for a Title III violation is an injunction, so the violation alleged must be capable of being remedied by an injunction. *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006).

In this case, taking Reed's claims against each of the three entities in turn, Reed alleges with respect to Coachman's Inn that "[s]pecific incidents of discrimination occurred at Coachman's Inn, where Plaintiff was treated differently and unfavorably compared to other guests without disabilities" (Dkt. No. 2, at 28). Second, with respect to Diamond Inn, Reed alleges more specifically that he stayed at Diamond Inn shortly before January 8, 2024 (*Id.*, at 109). Prior to his stay, Reed allegedly notified Diamond Inn that he had mobility challenges and "a need for a quiet room away from high-traffic areas" as an accommodation for his mental health conditions (*Id.*, at 110). However, Reed was allegedly rebuffed on his requests and found that the property did not have a wheelchair ramp at the front desk (*Id.*, at 109–10). When Reed asked staff for assistance "for luggage and ADA accommodations," he was refused (*Id.*, at 111). Finally, with respect to St. Bernard's Hospital, Reed alleges that Reed was "detained in the mental health ward" and that staff stated he was delusional because he claimed to be a retired federal agent (*Id.*, at 117). Staff allegedly dismissed him as "crazy" and joked about the situation (*Id.*).

Based on these allegations, Reed has plausibly stated a Title III claim against Diamond Inn. Specifically, the lack of a wheelchair ramp providing access to the front desk is a potential ADA violation that may be remedied by injunctive relief. However, Reed fails to state a Title III claim against Coachman's Inn or St. Bernard's Hospital, as Reed alleges no specific, nonconclusory factual allegations against Coachman's Inn, and, to the extent that Reed alleges specific facts against St. Bernard's hospital, those allegations relate to the behavior of certain

16

employees during a single incident at an unspecified time—which, even if true, would not properly warrant prospective injunctive relief against the hospital under Title III.

For these reasons, the Court finds Reed's allegations sufficient for present purposes to state a claim under Title III of the ADA against Diamond Inn.  The Court finds that Reed's complaint fails to state a claim upon which relief can be granted under Title III, or to state any other claim, against Coachman's Inn or St. Bernard's Hospital.

### 4.    State Civil Rights And Antidiscrimination Claims

Reed alleges generally that defendants are liable for violations of "state civil rights laws" and "applicable state anti-discrimination laws" (*Id.*, at 80–86).  However, Reed never specifies which state laws he believes are applicable or what claims he brings pursuant to those laws.  For these reasons, the Court finds that Reed's complaint fails to state sufficiently a claim with respect to any state civil rights or antidiscrimination statutes.

### 5.    State Law Tort Claims

#### a.    Immunity And Liability Standard

Reed alleges a variety of state law tort claims, including assault and battery, intentional infliction of emotional distress, false arrest, false imprisonment, malicious prosecution, negligent infliction of emotional distress, and negligence (*Id.*, at 86–105).  Because Reed alleges only official capacity claims, the true defendants to these claims are, for reasons explained in this Order, Wynne and Cross County.  However, Arkansas Code Annotated § 21-9-301 provides a measure of immunity from tort claims to "political subdivisions" of the state.  Although Wynne and Cross County are political subdivisions of Arkansas, the Arkansas Supreme Court has held that Arkansas Code Annotated § 21-9-301 is an affirmative defense that must be specifically pled and proven in

17

order to be considered.  *Vent v. Johnson*, 303 S.W.3d 46, 53 (Ark. 2009).  As such, the Court will proceed with screening Reed's tort claims.

As an initial matter, for purposes of liability under Arkansas tort law, the doctrine of *respondeat superior* provides that an employer is liable "when an employee commits a foreseeable act within the scope of his employment at the time of the incident."  *Costner v. Adams*, 121 S.W.3d 164, 169 (Ark. Ct. App. 2003).  Based on the allegations in the complaint, the Court finds that Reed has sufficiently alleged that Wynne and Cross County law enforcement officers were acting foreseeably within the scope of their employment at all relevant times, as all of Reed's alleged interactions with law enforcement officers occurred while the officers were on duty and undertaking law enforcement activities.

### b.    Assault And Battery

To state a claim for assault and battery under Arkansas law, a plaintiff must allege:  (1) the defendant intentionally placed the plaintiff in fear of immediate physical harm; and (2) the defendant acted with the intent to cause harmful contact to the plaintiff and did so.  *Mann v. Pierce*, 505 S.W.3d 150, 154 (Ark. 2016).  For the reasons stated in the Court's analysis of Reed's § 1983 excessive force claim, the Court finds that Reed has sufficiently stated a claim for assault and battery against Wynne and Cross County.

### c.    Outrage

Reed alleges that Wynne and Cross County are liable to him for the tort of intentional infliction of emotional distress, which in Arkansas law is referred to as "outrage."  *Ross v. Patterson*, 817 S.W.2d 418, 420 (Ark. 1991).  In an action for outrage, a plaintiff must sufficiently allege four elements:  (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; (2) the defendant's conduct

was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Williams v. Mannis*, 889 F.3d 926, 932 (8th Cir. 2018) (quoting *Crockett v. Essex*, 19 S.W.3d 585, 589 (Ark. 2000). Arkansas courts look to several factors to determine whether conduct is "extreme and outrageous." *Doe v. Wright*, 82 F.3d 265, 269 (8th Cir. 1996). Those factors include: the conduct at issue; the amount of time over which the conduct took place; the relation between the plaintiff and defendant; and the defendant's knowledge that the plaintiff is particularly susceptible to emotional distress by some mental or physical peculiarity. *Id.*

The Arkansas Supreme Court has repeatedly held that "the tort of outrage is not favored by this court and that clear cut proof is required to establish the elements in outrage cases." *Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 762 (8th Cir. 1998) (quoting *Shepherd v. Wash. Cnty.*, 962 S.W.2d 779, 792 (Ark. 1998)). As such, Arkansas courts have taken a strict approach to determining the validity of an outrage claim, recognizing that the "tort of outrage should not and does not open the doors of the courts to every slight insult or indignity one must endure in life." *Tandy Corp. v. Bone*, 678 S.W.2d 312, 315 (Ark. 1984). The type of conduct that meets the standard for outrage is determined on a case-by-case basis. *Crockett v. Essex*, 19 S.W.3d 585, 589 (Ark. 2000). Merely describing conduct as outrageous does not make it so. *Id.* Even gross negligence cannot be characterized as "atrocious or exceeding all possible bounds of decency." *Wood v. Nat'l Comput. Sys., Inc.*, 814 F.2d 544, 545 (8th Cir. 1987).

In this case, Reed has alleged sufficient facts to state a claim for outrage. Reed alleges that, on July 31, 2021, he was tased three times by police officers while handcuffed after requesting

police assistance because he did not remove items from a vehicle fast enough (Dkt. No. 2, at 26–27).  Likewise, on October 23, 2023, Reed was allegedly slammed face down onto concrete with leg irons by police officers after requesting their help with a mental health emergency (*Id.*, at 27–28, 87).  Considering that Reed has also alleged that the officers were aware of Reed's mental health conditions at all relevant times (*Id.*, at 97), Reed has established for pleading purposes that Wynne and Cross County law enforcement officers acted in an extreme and outrageous manner and in a way that they knew or should have known would cause Reed emotional distress.  When viewed in the light of Reed's alleged mental health conditions, these actions plausibly caused Reed emotional distress "so severe that no reasonable person could be expected to endure it."

For these reasons, the Court finds that Reed has sufficiently stated a claim for outrage against Wynne and Cross County.

### d.    False Arrest Or False Imprisonment

Construed liberally, Reed's complaint also sufficiently alleges a claim for the tort of false arrest against Wynne and Cross County, also known as false imprisonment (*Id.*, at 88–91).  To state a claim for false arrest or false imprisonment under Arkansas law, a plaintiff must allege that the personal liberty of the plaintiff was violated by the defendant, consisting of detention without sufficient legal authority.  *Grandjean v. Grandjean*, 869 S.W.2d 709, 711 (Ark. 1994).  For the reasons stated in the Court's analysis of Reed's § 1983 false arrest claim, the Court finds that Reed's complaint successfully states a claim for false arrest or false imprisonment against Wynne and Cross County under Arkansas tort law.

### e.    Malicious Prosecution

Reed's complaint alleges a claim of malicious prosecution against Wynne and Cross County (Dkt. No. 2, at 99–105).  To state a claim for malicious prosecution under Arkansas law,

a plaintiff must allege:  (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) malice on the part of the defendant; and (5) damages.  *Id.*  Malice can be inferred from a lack of probable cause.  *Family Dollar Trucking, Inc. v. Huff*, 474 S.W.3d 100, 104 (Ark. Ct. App. 2015) (quoting *McMullen v. McHughes L. Firm*, 454 S.W.3d 200, 210 (Ark. 2015)).

In this case, Reed alleges a list of specific charges brought against him by Wynne or Cross County and that most of these have been dismissed by the courts (Dkt. No. 2, at 100–01).  Reed also alleges, both generally and specifically with respect to alleged incidents on July 31, 2021, and October 23, 2023, that he was repeatedly arrested and charged without probable cause (*Id.*, at 26–28, 99–100).  Reed alleges that he has suffered damages from these prosecutions in the form of the financial burdens imposed on him by the proceedings and emotional distress (*Id.*, at 101).

For these reasons, the Court finds that Reed has sufficiently stated a claim for malicious prosecution against Wynne and Cross County.

### f.      Negligent Infliction Of Emotional Distress

Reed alleges that Wynne and Cross County are liable to him for negligent infliction of emotional distress (*Id.*, at 96–99).  However, Arkansas courts do not recognize the tort of negligent infliction of emotional distress.  *Dowty v. Riggs*, 385 S.W.3d 117, 120 (Ark. 2010).  For these reasons, the Court finds that Reed's complaint fails to state a claim upon which relief can be granted for negligent infliction of emotional distress.

### g.      Negligence

Finally, Reed alleges that Wynne and Cross County are liable to him under general negligence principles (Dkt. No. 2, at 94–96).  For the reasons stated in the Court's analysis of

Reed's § 1983 and intentional tort claims, the Court finds that Reed has plausibly alleged a claim for negligence against Wynne and Cross County for present purposes.

### 6.    Forrest City Defendants

Having analyzed all of Reed's alleged causes of action in the light of the specific factual allegations in the complaint, the Court notes that the complaint contains no specific factual allegations against Forrest City or its officials directly concerning Reed.  The only specific allegations against Forrest City concern the actions of Forrest City police officers against Taylor, not Reed (*Id.*, at 33–34, 110).  For these reasons, the Court finds that Reed fails to state a claim upon which relief can be granted against Forrest City.

### D.    Conclusion On Screening

For all of these reasons, the Court determines that Reed may proceed with his claims as follows:

(1)    Claims brought pursuant to 42 U.S.C. § 1983 for:

    (a)    Excessive force under the Fourth Amendment against Wynne and Cross County;

    (b)    First Amendment retaliation against Wynne and Cross County;

    (c)    False arrest under the Fourth Amendment against Wynne and Cross County;

    (d)    Failure to train, supervise, or discipline against Wynne;

(2)    Title II ADA claims against Wynne and Cross County;

(3)    Title III ADA claims against Diamond Inn;

(4)    Arkansas assault and battery claims against Wynne and Cross County;

(5)    Arkansas tort of outrage claims against Wynne and Cross County;

(6)    Arkansas false arrest and false imprisonment claims against Wynne and Cross County;

(7)    Arkansas malicious prosecution claims against Wynne and Cross County; and

(8)    Arkansas negligence claims against Wynne and Cross County.

**III.    Motion To Appoint Counsel**

Before the Court is Reed's motion to appoint counsel (Dkt. No. 3).  A civil litigant does not have a constitutional or statutory right to appointed counsel in a civil action but the Court may appoint counsel at its discretion. 28 U.S.C. § 1915(e)(1).  Given the early stage of the litigation, the Court declines to appoint counsel for Reed at this time.  The Court denies the motion (Dkt. No. 3).

**IV.    Conclusion**

For the foregoing reasons, the Court grants Reed's motion to proceed IFP (Dkt. No. 1) and denies his motion to appoint counsel (Dkt. No. 3).  The Court directs the Clerk to issue summons in this action and provide the summons to the United States Marshals Service for service upon: (1) defendant Wynne at the address provided by Reed in his complaint, 206 Falls Blvd South Wynne, AR 72396 (Dkt. No. 2, at 1); (2) defendant Cross County at the address provided in the complaint for the Cross County Sheriff's Department, 1600 S Falls Blvd, Wynne Arkansas 72396 (*Id.*, at 2); and (3) upon defendant Diamond Inn at the address provided in the complaint, 115 Barrow Hill Rd, Forrest City, Arkansas 72335 (*Id.*, at 3).  Fed. R. Civ. P. 4(c)(3).  The Court extends the time for service in this matter to 60 days from the date of this Order.

Only Reed may proceed with claims brought only on his own behalf in this matter.  He may proceed with the following claims against the following defendants:

(1) Claims brought pursuant to 42 U.S.C. § 1983 for:

      (a)    Excessive force under the Fourth Amendment against Wynne and Cross County;

      (b)    First Amendment retaliation against Wynne and Cross County;

      (c)    False arrest under the Fourth Amendment against Wynne and Cross County;

      (d)    Failure to train, supervise, or discipline against Wynne;

(2)    Title II ADA claims against Wynne and Cross County;

(3)    Title III ADA claims against Coachman's Inn;

(4)    Arkansas assault and battery claims against Wynne and Cross County;

(5)    Arkansas tort of outrage claims against Wynne and Cross County;

(6)    Arkansas false arrest and false imprisonment claims against Wynne and Cross County;

(7)    Arkansas malicious prosecution claims against Wynne and Cross County; and

(8)    Arkansas negligence claims against Wynne and Cross County.

All other claims against all other defendants are dismissed at this time.

It is so ordered this 22nd day of September, 2025.

_____
Kristine G. Baker
Chief United States District Judge

24